UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GLOBAL FUNDING GROUP, LLC,

                      Plaintiff,          **MEMORANDUM AND ORDER**
                                                        15 CV 6595 (DRH) (AKT)

    - against -

133 COMMUNITY ROAD, LTD., AMERICAN
REAL ESTATE INVESTMENTS, LLC, ARETE
REAL ESTATE & DEVELOPMENT CO., CASA
CAPITAL GROUP, CASA CAPITAL GROUP
DEVELOPMENTS, DAN DODSON, LACHLAN
McPHERSON, and JAMES WINE,

                      Defendants.
----------------------------------------------------------------X
**APPEARANCES:**

**PALMIERI, CASTIGLIONE, NIGHTINGALE PC**
Attorneys for Plaintiff
250 Mineola Boulevard, 2nd Floor
Mineola, NY 11501
By:    Vito A. Palmieri, Esq.

**GANA LLP**
Attorneys for Defendants
345 Seventh Avenue, 21st Floor
New York, NY 10001
By:    Adam J. Weinstein, Esq.
         Adam Julien Gana, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Global Funding Group, LLC ("plaintiff") commenced this action against 133 Community Road, Ltd., American Real Estate Investments, LLC, Arete Real Estate & Development Co., Casa Capital Group, Casa Capital Group Developments, Dan Dodson, Lachlan McPherson, and James Wine (collectively, "defendants") in Nassau County Supreme Court asserting claims of breach of contract, account stated, and unjust enrichment. On November 17, 2015, defendants removed the action to the United States District Court for the

1

Eastern District of New York. Presently before the Court is defendants' motion to dismiss the plaintiff's claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, that motion is granted.

**BACKGROUND**

The following facts are taken from plaintiff's Complaint.

On or about January 26, 2015, the plaintiff and defendants entered into an agreement (the "agreement") for financial services whereby plaintiff as "Broker" and defendants as "Borrowers" agreed that "plaintiff would obtain a mortgage loan and/or equity partner for the defendant[s], for financing and/or an equity investment in the amount of $12,000,000.00." (Compl. ¶ 21.) The agreement contained various provisions relevant to this litigation, and each will be discussed in turn.

First, according to the agreement, defendants were to pay a "Due Diligence/Analysis Fee" to plaintiff in the amount of $10,000 "for the analysis, review and due diligence services associated with the packaging, processing and placement of the Loan/Mortgage /JV [(Joint Venture)] Partnership" (the "due diligence provision"). (Complaint Ex. A ("Agreement") ¶ 2.) Half of the fee, $5,000, was to be paid "upon the execution of the Loan/mortgage/JV partnership application for the Due Diligence work associated with the Mortgage/Loan/JV Package." (*Id*. ¶ 2(a).) The other $5,000 was to be paid "upon receipt and production of a Commitment/Loan/JV/Approval as for the services rendered." (*Id*. ¶ 2(b).)

The agreement also provided that defendants were to pay the plaintiff for its services in the amount of "TEN (10%) Percent of the Gross Funds Secured via the loan and the JV equity Brokers' fee ('Commission/Consultant/JV Fee')" (the "compensation provision"). (*Id*. ¶ 3.) This fee was to be due "at such time as Broker secures and provides Borrower with a Loan

2

Commitment from a Lender or Bank and or a JV Partnership Agreement or any combination of the two which in the aggregate are accepted by Borrower." (*Id*. ¶ 4.)

Additionally, the agreement stated that "Borrowers acknowledge and agree that they will be in '*Breach*' of this agreement in the event that Borrowers fail to cooperate with Broker in the facilitation of or fail to furnish necessary documents requested by *Broker* or otherwise deliberately, directly, or, indirectly, hinder or inhibit the loan process of said loan, irrevocably harming and depriving Broker a chance to earn such fee for his services during the term of this agreement" (the "Borrowers' breach provision"). (*Id*. ¶ 7.) It also provided that "Borrowers shall be subject to payment of Brokers Fee as outlined in paragraph 3 above upon any Breach OF ANY OF THE TERMS OF THIS AGREEMENT . . . ." (*Id*.)

Further, the "Non Circumvent-Non-Disclosure-Non-Consent" clause provided as follows: "Borrowers acknowledge and agreed that they shall not contact or solicit directly or indirectly any and all *Lenders, Banks, Investors, Brokers and or Joint Venture Capitalist introduced by or discovered through Broker. Borrower also agrees not to Circumvent Broker or any of its affiliates in* anyway [sic] shape or form, (With-Out the Expressed Written Permission, of Broker)." (*Id*. ¶ 8.)

Finally, the agreement provided that "Broker shall be the exclusive Broker for this project pursuant to the terms of this agreement for a period of Thirty (30) Days from date hereof" (the "exclusivity provision"). (*Id*. ¶ 9.)

In January of 2015, plaintiff obtained a document entitled "Letter of Interest" (Complaint, Ex. B ("LOI")) from High Rises, LLC ("High Rises" or "HR"). The LOI stated that High Rises "is interested in providing JV funding for [defendants'] project" and proposes funding in the amount of $12,000,000 upon "general terms and conditions, as may be required and determined

by HR." (LOI at 1.) It also stated that "IN NOW WAY SHOULD THIS BE CONSIDERED A 'FIRM' FUNDING COMMITMENT" (*Id.*) The LOI was signed by HR and defendant American Real Estate Investment, LLC.

Plaintiff alleges that on or about January 29, 2015, defendants accepted the LOI and claims that "[b]ased on the agreement between Plaintiff and Defendants and the foregoing production of the [LOI] the Defendant[s] [were] to pay Plaintiff its due diligence fee in the amount of $10,000.00" as well as the Commission/Consultant/JV fee in the amount of $1,200,000.00. (Compl. ¶¶ 25-26.) However, defendants have paid only $5,000.00 to the plaintiff.[1]

## DISCUSSION

### I. *Legal Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)); *accord Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir. 2009). First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported

---

[1] According to defendants, "[t]hough not contractually obligated, Defendants paid Plaintiff the first $5,000 [due under the due diligence provision] and do not owe Plaintiff anything further." (Defs.' Mem. in Supp. at 3.)

by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly,* 550 U.S. at 555. Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly,* 550 U.S. at 556–57) (internal citations omitted); *see In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; accord *Harris*, 572 F.3d at 72.

## II. *Plaintiff's Breach of Contract Claim*

To establish a breach of contract claim in New York, a plaintiff must show: "(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir.1996).

In its opposition to defendants' motion to dismiss, plaintiff asserts that defendants breached numerous provisions of the agreement. First, it argues that defendants breached the due diligence and compensation provisions in "refusing to pay Plaintiff both: (a) the $5,000 balance upon Plaintiff's procurement of the Joint Venture Approval from High Rises, which, on

January 29, 2015, Defendants accepted in writing; and (b) Plaintiff's duly earned $1.2 million share of the equity draw upon Defendants' written acceptance of the LOI – which provided the Defendants a Joint Venture Partner in High Rises." (Pl.'s Mem. in Opp'n at 6.)

Defendants argue, however, that since "Defendants never executed any loan, mortgage, or JV partnership application, and never received a commitment, loan, or JV approval," the due diligence fee never became due. (Defs.' Mem. in Supp. at 5.) Similarly, they argue that plaintiff "never provided Defendants with either a 'Loan Commitment from a Lender or Bank' or a 'JV Partnership Agreement' " such that the Commission/Consultant/JV Fee never became due. (*Id*. at 7.)

Whether defendants breached the due diligence and compensation provisions turns on whether the LOI was the type of document that required defendants to pay the fees due under those provisions. Specifically, the LOI must have been a "Commitment/Loan/JV/Approval" in order for the defendants to owe the second $5,000 pursuant to the due diligence provision, and it must have been a "Loan Commitment from a Lender or Bank and or a JV Partnership Agreement" in order for the defendants to owe the $12,000,000 pursuant to the compensation provision. Plaintiff's position regarding that issue is confusing. In the Complaint, plaintiff alleges that the LOI is a "joint venture/mortgage Commitment and/or letter of intent." (Compl. ¶ 27.) Additionally, in its opposition papers, it refers to the LOI as a joint venture agreement fully executed by the parties. (Pl.'s Mem. in Opp'n at 8.) But plaintiff also argues that the LOI was not a final agreement, but a preliminary binding agreement, referred to under New York law as a "Type II agreement," which reflected agreement on certain major terms, but only bound High Rises and the defendants to the obligation to negotiate open issues in good faith. (Pl.'s Mem. in Opp'n at 9.)

The Court is not persuaded by any of these interpretations of the LOI. Firstly, plaintiff's referral to the LOI as either a joint venture commitment or agreement is not supported by the LOI itself. Plaintiff ignores the language on the first page of the LOI indicating that it is a "Letter of Interest." Moreover, it states on page one that "IN NO WAY SHOULD THIS BE CONSIDERED A 'FIRM' FUNDING COMMITMENT," and, as plaintiff's submission acknowledges, the LOI contained open terms. For these reasons, the document itself indicates that it is not a commitment or binding agreement, and plaintiff has not alleged any facts suggesting that this document should be construed as anything other than a noncommittal, non-binding letter of interest.

Moreover, to the extent plaintiff argues that the agreement is a Type II preliminary agreement, such an agreement would not trigger the provisions at issue here. As articulated by the Second Circuit, a Type II agreement "does not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate the open issues in good faith in an attempt to reach the . . . objective within the agreed framework." *Adjustrite Systems, Inc. v. GAN Business Servs., Inc.*, 145 F.3d 543, 548 (2d Cir. 1998) (internal quotation marks and citation omitted). "This obligation does not guarantee that the final contract will be concluded if both parties comport with their obligation, as good faith differences in the negotiation of the open issues may prevent a reaching of final contract." *Teachers Ins. And Annuity Ass'n of Amer. v. Tribune*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987)." Thus, a Type II agreement would not constitute a "Commitment/Loan/JV/Approval" or a "JV Partnership Agreement" for purposes of the due diligence and compensation provisions, respectively.

Plaintiff also argues that defendants "breached the 'Borrowers Breach' clause of the Global Agreement, in (1) failing to cooperate with Plaintiff in the facilitation of the agreed upon

joint venture partnership; and (2) depriving Plaintiff [of] a chance to earn the agreed upon fee for his services during the term of the Global Agreement." (Pl.'s Mem. in Opp'n at 6-7.) Moreover, plaintiff claims that defendants breached this provision "by terminating the LOI, thereby failing to cooperate with Plaintiff and refusing to facilitate the completion of the agreed upon financial transaction." (*Id.* at 7.) However, as discussed above, pursuant to the facts as alleged, defendants were not obligated to consummate the transaction with High Rises. Moreover, plaintiff has not alleged any facts suggesting that plaintiff failed to cooperate with defendants, and as defendants point out, plaintiff mentions a breach of this provision for the first time in its opposition papers.

Similarly, for the first time in its brief, plaintiff asserts that defendants breached the "Non Circumvent-Non-Disclosure-Non-Consent" clause. Plaintiff argues that "Defendants wrongfully circumvented Plaintiff and improperly disclosed the terms of the Global Agreement and LOI when Defendants disclosed all such terms to the seller of the commercial property [for which the plaintiff sought financing to purchase] – using the LOI as leverage to obtain financing directly from the seller, and consequently, terminating the approved Joint Venture Partnership, which High Rises and Defendants already had agreed upon." (Pl.'s Mem. in Opp'n at 7-8.) However, even assuming these allegations could constitute a breach of the provision in question, there are no allegations of any of this type of behavior in the Complaint.

Finally, plaintiff now argues that defendants breached the exclusivity provision, when "they wrongfully terminated the Global Agreement prior to the expiration of the 30-day period of exclusivity from the date Plaintiff and Defendants fully executed the Global Agreement." (*Id.* at 8.) Plaintiff's Complaint, however, contains no allegations that defendants used any other broker within the thirty day period of exclusivity, thereby breaching the provision.

For all of the foregoing reasons, plaintiff's breach of contract claim is dismissed.

### III. *Plaintiff's Claims of Account Stated and Unjust Enrichment*

In order to sufficiently plead a claim for an account stated, "a plaintiff must allege that '(1) an account was presented, (2) the account was accepted as correct, and (3) the debtor promised to pay the amount stated.'" *Fort Productions, Inc. v. Men's Medical Clinic, LLC*, 2016 WL 797577, at *3 (S.D.N.Y. Feb. 23, 2016) (quoting *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186, at *12 (S.D.N.Y. Aug. 11, 2006)).

Plaintiff alleges that "there was an accounting between Plaintiff and Defendant[s] regarding said Defendants owing the Plaintiff $1,205,000.00 for financial services rendered" and "Defendants agreed to pay the sum." (Compl. ¶¶ 31-32.) However, plaintiff has not sufficiently alleged that defendants agreed to pay the amount sought under the circumstances or accepted it as correct. Therefore, plaintiff's claim for an account stated is dismissed.

Under New York law, to make out a claim for unjust enrichment, a plaintiff must establish: "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.,* 273 F.3d 509, 519 (2d Cir. 2001). Plaintiff alleges that defendants have been unjustly enriched in the amount of $1,205,000.000 plus interest. (Compl.¶¶ 35-39.) Plaintiff's claim is based on its argument that the defendants owed this sum as a result of their acceptance of the LOI. But, as discussed above, plaintiff has not sufficiently plead that the LOI triggered any of the contract fees. As a result, this claim is dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion is granted and plaintiff's claims are dismissed without prejudice. Should plaintiff choose to replead, an amended complaint must be served within thirty (30) days of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
April 19, 2016

/s/ _____
Denis R. Hurley
Unites States District Judge