UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GLOBAL FUNDING GROUP, LLC,

                        Plaintiff,          **MEMORANDUM AND ORDER**
                                                    15 CV 6595 (DRH) (AKT)

      - against -

133 COMMUNITY ROAD, LTD., AMERICAN
REAL ESTATE INVESTMENTS, LLC, ARETE
REAL ESTATE & DEVELOPMENT CO., CASA
CAPITAL GROUP, CASA CAPITAL GROUP
DEVELOPMENTS, DAN DODSON, LACHLAN
McPHERSON, and JAMES WINE,

                        Defendants.
----------------------------------------------------------------X
**APPEARANCES:**

**PALMIERI, CASTIGLIONE, NIGHTINGALE PC**
Attorneys for Plaintiff
250 Mineola Boulevard, 2nd Floor
Mineola, NY 11501
By:    Vito A. Palmieri, Esq.

**GANA LLP**
Attorneys for Defendants
345 Seventh Avenue, 21st Floor
New York, NY 10001
By:    Adam J. Weinstein, Esq.
        Adam Julien Gana, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Global Funding Group, LLC ("plaintiff") commenced this action against 133

Community Road, Ltd., American Real Estate Investments, LLC, Arete Real Estate &

Development Co., Casa Capital Group, Casa Capital Group Developments, Dan Dodson,

Lachlan McPherson, and James Wine (collectively, "defendants") in Nassau County Supreme

Court asserting claims of breach of contract, account stated, and unjust enrichment. On

November 17, 2015, defendants removed the action to the United States District Court for the

1

Eastern District of New York. In an order dated April 19, 2016 ("the April Order"), the Court granted defendants' motion to dismiss the plaintiff's claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and granted plaintiff leave to replead. On May 17, 2016, plaintiff filed an Amended Complaint asserting claims of breach of contract, fraud, unjust enrichment, quantum meruit, and account stated. Presently before the Court, is defendants' motion to dismiss the Amended Complaint. For the reasons set forth below, that motion is granted in part and denied in part.

**BACKGROUND**

On or about January 26, 2015, the plaintiff and defendants entered into an agreement (the "agreement") for financial services whereby plaintiff as "Broker" and defendants as "Borrowers" agreed that plaintiff would obtain a mortgage loan commitment and/or an equity partner for the defendants in connection with a planned construction project. (Amend. Compl. ¶ 21.)

Paragraph three of the agreement provided that defendants were to pay the plaintiff for its services in the amount of "TEN (10%) Percent of the Gross Funds Secured via the loan and the [joint venture ("JV")] equity." (Amend. Compl., Ex. A ("the agreement") ¶ 3.) Pursuant to paragraph 4, this fee was to be due "at such time as Broker secures and provides Borrower with a Loan Commitment from a Lender or Bank and or a JV Partnership Agreement or any combination of the two which in the aggregate are accepted by Borrower." (*Id*. ¶ 4.) Together, these terms comprise the agreement's "Compensation" provisions.

Additionally, the agreement stated that "Borrowers acknowledge and agree that they will be in '*Breach*' of this agreement in the event that Borrowers fail to cooperate with Broker in the facilitation of or fail to furnish necessary documents requested by *Broker* or otherwise deliberately, directly, or, indirectly, hinder or inhibit the loan process of said loan, irrevocably

harming and depriving Broker a chance to earn such fee for his services during the term of this agreement" (the "Borrowers' Breach" provision).  (*Id*. ¶ 7.)  The Borrowers' Breach provision also provided that "Borrowers shall be subject to payment of Brokers Fee as outlined in paragraph 3 above upon any Breach OF ANY OF THE TERMS OF THIS AGREEMENT . . . ." (*Id*.)

Further, the "Non Circumvent-Non-Disclosure-Non-Consent" clause provided as follows: "Borrowers acknowledge and agree that they shall not contact or solicit directly or indirectly any or all *Lenders, Banks, Investors, Brokers and or Joint Venture Capitalist introduced by or discovered through Broker.  Borrower also agrees not to Circumvent Broker or any of its affiliates in* anyway [sic] shape or form, (With-Out the Expressed Written Permission, of Broker)" (the "Non-circumvent" provision).  (*Id*. ¶ 8.)

In January of 2015, plaintiff obtained a document entitled "Letter of Interest" (Complaint, Ex. B ("LOI")) from High Rises, LLC ("High Rises" or "HR").  The LOI stated that High Rises "is interested in providing JV funding for [defendants'] project" and proposes funding in the amount of $12,000,000 upon "general terms and conditions, as may be required and determined by HR."  (LOI at 1.)  It also stated that "IN NO WAY SHOULD THIS BE CONSIDERED A 'FIRM' FUNDING COMMITMENT"  (*Id*.)  The LOI was signed by HR and defendant American Real Estate Investment, LLC.

In its original complaint, plaintiff alleged that, *inter alia*, defendants breached the Compensation provisions of the agreement because based on the LOI, it was entitled to the 10% fee.  The Court, however, dismissed plaintiff's claim finding that the LOI was not a "Loan Commitment from a Lender or Bank and or a JV Partnership Agreement" such that defendants were required to pay the fee.

In the Amended Complaint, plaintiff claims that defendants breached the Borrowers' Breach and Non-circumvent clauses of the agreement. It claims that the purpose of these clauses "was to forestall the practice, common in the real estate industry, of Defendants taking advantage of the Plaintiff's efforts and diligence by obtaining a funding commitment through the Plaintiff and then 'shopping' the commitment to other lenders to obtain better terms." (Amend. Compl. ¶ 23.) Specifically, with respect to the Borrowers' Breach provision, plaintiff claims that defendants breached the agreement in that they "failed to cooperate with the Plaintiff and/or High Rises, LLC in arranging the financing specified" in the LOI. (*Id.* ¶ 32.) It alleges that "despite the fact that Plaintiff timely secured a [LOI] from High Rises, LLC and timely resolved all of Defendants' concerns with respect thereto, the Defendants did not provide the documentation requested and required by High Rises, LLC." (*Id.* ¶ 29.) It also alleges that defendants stopped returning plaintiff's phone calls and emails. Moreover, it alleges that defendants breached the Non-circumvent provision because they "took the [LOI] and 'shopped it to other lenders in order to obtain better terms." (*Id.* ¶ 33.)

## DISCUSSION

### I.   *Legal Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)); *accord Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir. 2009). First, the principle that a court must accept all allegations as true

is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly,* 550 U.S. at 555. Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly,* 550 U.S. at 556–57) (internal citations omitted); *see In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; accord *Harris*, 572 F.3d at 72.

## II.    *Plaintiff's Breach of Contract Claims*

To establish a breach of contract claim in New York, a plaintiff must show: "(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996). Plaintiff claims that defendants breached both the Borrowers' Breach and Non-circumvent provisions of the agreement. Each will be discussed in turn below.

### A. Breach of the Borrowers' Breach Provision

Defendants argue that based on the Borrowers' Breach provision's reference to paragraph 3, "damages would be determined pursuant to the compensation provisions of the Agreement," and pursuant to the Compensation provisions, plaintiff would be entitled to compensation only if the LOI was a "Loan Commitment from a Lender or Bank and or a JV Partnership Agreement." (Defs.' Mem. in Supp. at 7.) Further, they argue that since the Court has already ruled that plaintiff failed to sufficiently plead that the LOI was a loan commitment, plaintiff is not entitled to compensation. Plaintiff argues, however, that "the reference to paragraph 3 is only for the amount of the accelerated payment that becomes owing rather than for any contingencies that might otherwise apply." (Pl.'s Mem. in Opp'n at 10.) Moreover, plaintiff contends that its interpretation is supported by language of the Borrowers' Breach provision, namely that it prohibits the borrower from hindering or inhibiting the "loan process," which according to plaintiff includes "all stages of obtaining financing rather than only when the formal commitment has been obtained." (*Id.* at 11.) Plaintiff also points to contract language providing that the Borrowers' Breach clause provides a remedy for "harming and depriving Broker [of] a chance to earn [its] fee," which "certainly does not bespeak an intent to restrict the remedy to situations where the fee has already been earned" pursuant to the Compensation provisions. Moreover, plaintiff argues that "[t]his is the only reasonable interpretation of the payment term of the Borrowers' Breach clause," as "Defendants' interpretation would provide the broker with no recourse where the borrower sabotages the issuance of a loan commitment, which is clearly what this clause was intended to guard against." (*Id.*)

Under New York law, "a writing's ambiguity is a question of law to be resolved by the courts 'by looking within the four corners of the document, not to outside sources.' "

*White*, 507 F. App'x 76, 78 (2d Cir. 2013) (quoting *Lockheed Martin Corp., v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011); further citation omitted). "In interpreting a contract under New York law, words and phrases ... should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Natl'l Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 206 (2d Cir. 2005) (citation and internal quotation marks omitted). Thus, a Court "must consider the entire contract to avoid adopting an interpretation that would result in an inconsistency between provisions or that would render a particular provision superfluous." *La Barbera v. Elite Ready Mix Corp.,* 2009 WL 2707358, at *4 (E.D.N.Y. Aug. 27, 2009); *see also Bank of N.Y. Trust, N.A. Franklin Advisers, Inc.,* 674 F. Supp. 2d 458, 463–64 (S.D.N.Y. 2009) ("[A]n interpretation that gives a reasonable and effective meaning to all of a contract is generally preferred to one that leaves a part unreasonable or of no effect."); *McGraw–Hill Cos., Inc. v. Vanguard Index Trust,* 139 F.Supp.2d 544, 552 (S.D.N.Y. 2001) ("[I]t is a cardinal rule of contract interpretation that a court must construe the terms of an agreement as a whole and in a manner that gives effect to the mutual intent of the parties.") (internal citations and quotation marks omitted).

Here, the Court finds that the language at issue is ambiguous. On the one hand, plaintiff's interpretation seems reasonable, as it would allow Broker to recover under the Borrowers' Breach clause if, as the language of the clause suggests, Borrower deprived the Broker of a chance to earn his fee prior to any loan commitment having been secured. On the other hand, that the fee is defined as 10% "of the Gross Funds Secured via the loan" would seem to imply that the funds must be secured prior to any fee becoming due. As the contract is ambiguous, the Court cannot say as a matter of law that defendants did not breach the contract. *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012) ("[I]n the

7

context of a motion to dismiss, if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim."). As a result, it will not dismiss this claim at this stage.

### B. Breach of the Non-circumvent Clause

Defendants claim that they did not breach the Non-circumvent provision because they did not "circumvent" the plaintiff; rather, they "obtain[ed] financing from [another] source after the Agreement ha[d] been terminated." (Defs.' Mem. in Supp. at 9.) However, this characterization of the facts contradicts the facts as alleged in the Complaint. Specifically, plaintiff alleges that while the agreement was still in effect, defendants shopped the LOI to other potential lenders. Viewing the facts as alleged, as the Court must do on a motion to dismiss, the Court cannot say that defendants did not breach the Non-circumvent clause as a matter of law. It is not clear what the contract term "circumvent" encompasses. It is reasonable that, as plaintiff suggests, pursuant to this clause defendants were prohibited from shopping the LOI to other vendors. Due to the ambiguity of the term at this stage, the Court will not dismiss this claim. *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012).

### C. Fraudulent Misrepresentation

Plaintiff alleges that defendants committed fraud in that "[a]t the time the Defendants made and executed the terms and representations set forth in the agreement annexed as Exhibit A, they never intended to comply with those terms and representations." (Amend. Compl. ¶ 41.) Defendants argue that this claim must be dismissed as "New York law compels dismissal of any purported 'fraud' claim where –as here – the proponent seeks only to enforce alleged contractual promises." (Defs.' Mem. in Supp. at 10.)

Indeed, "[g]eneral allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support" a fraud claim. *N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y. 2d 308, 318 (1995). Rather, "plaintiff must allege a misrepresentation or material omission by defendant, on which it relied, that induced plaintiff to" enter the contract. *Id*. Such representation must be "collateral" to the contract. *Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y. 2d 954, 956 (1986); *see Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) ("To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.") (internal citations omitted). Where the complaint does not allege any specific collateral promises or omissions of material fact that were relied upon in entering the contract, "it alleges nothing more than a breach of the contract," and the fraud claim must be dismissed. *N.Y. Univ.*, 87 N.Y. 2d at 318.

Here, plaintiff's fraud claim must be dismissed because it rests entirely upon allegations that defendants did not intend to comply with the terms of the contract. Moreover, plaintiff does not allege any misrepresentations collateral or extraneous to the contract. Rather, plaintiff's alleged fraudulent misrepresentations are the same terms of the contract that support its breach of contract claims. As such, its allegations are insufficient to support a fraud claim.

Plaintiff's reliance on *Bibeau v. Ward*, 193 A.D. 2d 875 (3d Dep't 1993), does not convince the Court otherwise. In that case, the court found that plaintiff had adequately alleged a fraud claim based on *Deerfield*. As discussed above, *Deerfield* specifically notes that in order to state a fraud claim, plaintiff must allege a misrepresentation that is collateral to the contract.

Therefore, "*Bibeau* is suspect authority for the plaintiff's position" that a fraud claim may rest upon misrepresentations identical to those that support its breach of contract claim. *OHM Remediation Servs. Corp. v. Hughes Envtl. Sys., Inc.*, 952 F. Supp. 120, 124 (N.D.N.Y.).

### D. Equitable Claims

Plaintiff alleges equitable claims of unjust enrichment, quantum meruit, and account stated. Defendants argue that all of these claims should be dismissed because they are duplicative of plaintiff's breach of contract claims.

"Unjust enrichment is a quasi-contract claim, and the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Good Luck Prod. Co., Ltd. v. Crystal Cove Seafood Corp.*, 60 F. Supp. 3d 365, 375 (E.D.N.Y. 2014) (internal quotation marks and citation omitted). Here, defendants do not dispute that a valid and enforceable contract exists. Therefore, "[t]his is not a case in which Plaintiff pleads alternative relief, but rather an instance in which the unjust enrichment claim is directly duplicative of the breach of contract claim." *Id*. Accordingly, the unjust enrichment claim is dismissed. For the same reason, plaintiff's quantum meruit and account stated claims are also dismissed. *See Aviv Const., Inc. v. Antiquarium, Ltd.*, 259 A.D. 2d 445, 446 (1st Dep't 1999) ("The existence of a valid and enforceable written contract precludes a quantum meruit claim."); *Simplex Grinnell v. Ultimate Realty, LLC*, 38 A.D. 3d 600, 600 (2d Dep't 2007) ("A cause of action alleging an account stated cannot be utilized simply as another means to collect under a disputed contract.").

## CONCLUSION

For the foregoing reasons, defendants' motion is granted in part and denied in part. Plaintiff's claims of fraud, unjust enrichment, quantum meruit, and account stated are dismissed

with prejudice. The case is referred back to Magistrate Judge Tomlinson for any remaining discovery.

**SO ORDERED.**

Dated: Central Islip, New York
May 10, 2017

/s/
Denis R. Hurley
Unites States District Judge